# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01155-RMR-SBP

BRIAN NEIL,

      Plaintiff,

v.

CITY OF LONE TREE, a municipality;
COMMANDER TIMOTHY BEALS, in his individual capacity;
DETECTIVE JOHN HASTINGS, in his individual capacity; and
SERGEANT TRAVIS SNEITH, in his individual capacity,

      Defendants.

---

## RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

---

**Susan Prose, United States Magistrate Judge**

      This matter comes before the court on Defendants' Motion to Dismiss (the "Motion" or "Motion to Dismiss") (ECF No. 21), filed on October 27, 2023, by Defendants City of Lone Tree, Timothy Beals, John Hastings, and Travis Sneith. This court considers the Motion pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated May 8, 2023 (ECF No. 4), and the Order Referring Motion dated October 27, 2023 (ECF No. 22), and concludes that oral argument will not materially assist in the resolution of this matter. Having carefully reviewed the Motion and associated briefing (ECF Nos. 32, 36, and 37-1[1]), the docket, and the applicable law, this court

---

[1] The document filed at ECF No. 37-1 is a surreply which Plaintiff Brian Neil requested leave to file without opposition from Defendants. ECF No. 37. The filing, however, was not docketed as a motion, and so the court has not previously approved the submission of a surreply. The court clarifies here that it has considered the surreply in evaluating the Motion to Dismiss.

respectfully **RECOMMENDS** that the Motion to Dismiss be **granted**.

## BACKGROUND

Plaintiff formerly worked as a Special Agent with the United States Drug Enforcement Administration ("DEA"). This lawsuit seeks damages stemming from an allegedly botched investigation by municipal police officers that led to Plaintiff's arrest and criminal prosecution and the prosecution's subsequent withdrawal of the charges against him. The court draws the following facts from the operative complaint, ECF No. 13 ("Amended Complaint" or "Am. Compl."), and relevant filings in Plaintiff's underlying state criminal case, the contents of which are subject to judicial notice.[2]

### I.    The May 5, 2021 Incident

Plaintiff was still employed by the DEA on May 5, 2021, when he was driving home from work in an "Official Government Vehicle." Am. Compl. ¶ 16. Although this vehicle was equipped with certain "emergency lights" and a "loud siren," *id.*, the well-pleaded facts indicate that it was a standard sports utility vehicle with no signage or lettering identifying it as an

---

[2] *See, e.g.*, *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (court may take judicial notice of filings in related cases, "both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"); *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1219 n.2 (10th Cir. 2011) (taking judicial notice of documents contained in court's electronic database and observing that this action was appropriate, "whether requested or not," and "at any stage of the proceeding") (citing Fed. R. Evid. 201(c), (f); *Rose v. Utah State Bar*, 471 F. App'x 818, 820 (10th Cir. 2012) (holding that district court was not obliged to convert a motion to dismiss to a motion for summary judgment when it took judicial notice of records of state court disciplinary proceedings). "Factual allegations that contradict a properly considered document are not well-pleaded facts that the court must accept as true." *Farrell-Cooper Mining Co. v. U.S. Dep't of Interior*, 728 F.3d 1229, 1237 n.6 (10th Cir. 2013) (cleaned up).

"Official Government Vehicle" or otherwise indicating that it was being driven by a law enforcement officer.

Around noon that day, while driving through Lone Tree, Plaintiff spotted a Porsche Cayenne SUV being driven in a reckless manner. *Id.* ¶¶ 17-20. He suspected the Porsche was stolen or that the occupants were fleeing a crime scene. *Id.* ¶ 21. When Plaintiff pulled directly behind the Porsche at a red light, he smelled marijuana coming from the open window of the vehicle and observed that the driver and his passenger were teenagers. *Id.* ¶¶ 22-23. At that point, Plaintiff felt himself "duty bound to pull the Porsche over." *Id.* ¶ 25. He believed himself to be "statutorily authorized to act not only as a peace officer, but as a DEA Special Agent." *Id.* ¶ 26. Plaintiff asserts that "[h]is authority to act was later confirmed by his DEA supervisors." *Id.* The confirmation occurred months later, as the timeline below confirms.

Plaintiff activated the lights and sirens on his unmarked SUV, but the driver of the Porsche did not pull over. *Id.* ¶¶ 27-28. Plaintiff continued to follow and observed the driver and passenger repeatedly bending down as if to hide something underneath their seats. *Id.* ¶ 29. Plaintiff then stuck his DEA badge in the front windshield of his SUV and made hand signals gesturing for the driver to pull over. *Id.* ¶ 32. The driver eventually pulled over about a half-mile down the road, in a church parking lot. *Id.* ¶ 34. Plaintiff "cautiously walk[ed] towards the Porsche," his gun and DEA badge "in plain view on his belt." *Id.*

During the encounter that followed, Plaintiff identified himself as a federal agent. *Id.* ¶ 37. He perceived that the driver—later identified as eighteen-year-old Mohid Saeed—was "nervous" and possibly "under the influence." *Id.* ¶¶ 32, 38. Saeed screamed at Plaintiff, and Jhoen Colchero, the nineteen-year-old passenger in the Porsche, yelled obscenities and

demanded Plaintiff's badge number—although Plaintiff does not allege that he gave Colchero his

badge number. *Id.* ¶¶ 22, 39.[3] At that point in the quickly-degenerating situation, Plaintiff "tried

to maintain a friendly demeanor" because he needed to get back to his SUV to retrieve his cell

phone and call the Lone Tree Police Department ("LTPD"). *Id.* ¶ 41. At the same time, Colchero

refused to comply with Plaintiff's "instructions" to step out of the vehicle, and Saeed suddenly

stepped on the gas, "fleeing the scene in mid-conversation with Plaintiff." *Id.* ¶ 42.

As the Porsche "sped away," Plaintiff decided to pull his gun. But he fumbled as he did

so, detaching the holster from his hip with the firearm still in it. He then "aimed his weapon" at

the fleeing Porsche—whether still holstered or not is unclear—but he asserts that he "never

intended to pull the trigger absent an imminent deadly threat against him or the public." *Id.* ¶ 43.

When the Porsche was no longer in sight, Plaintiff put his holster back on his hip, returned to his

car, and called David Smith, his immediate supervisor at the DEA. *Id.* ¶ 46. James Stroop, the

DEA Assistant Special Agent in Charge, "was also on the line when Plaintiff relayed what had

just happened," *id.* ¶ 46, and neither of these supervisory officials "question[ed] Plaintiff's

actions or authority to conduct this traffic stop as a peace officer or DEA Special Agent." *Id.*

¶ 47. Those DEA officials, however, did not tell anyone at LTPD that Plaintiff had authority to

stop Saeed or to aim a gun at a fleeing vehicle. *See id.* (no allegations concerning

communications between DEA officials and LTPD officers on May 5, 2021); *id.* ¶ 43.

After receiving "instructions" from his DEA supervisors "for contacting LTPD," *id.* ¶ 47,

---

[3] Colchero is referred to as "Colcheno" in documents appended to the Motion. Except when
quoting directly from those documents, the court adopts Plaintiff's spelling and will refer to the
passenger as Colchero.

Mr. Neal called the department and was interviewed shortly thereafter by Defendant Beals, a

commander for LTPD. In that initial interview, which took place at Plaintiff's home, Plaintiff

told Beals that he reached for—but did not draw—his weapon. *Id.* ¶ 53. After Beals left, Plaintiff

"suddenly remembered" that he had removed his gun and called Beals to correct that error. *Id.* In

that call, Plaintiff told Beals he was "'99 percent sure' that he did *not* point his weapon at the

vehicle because the holster was still attached," *id.* (emphasis added), a statement that contradicts

his earlier allegation that he "aimed his weapon at the Porsche." *Id.* ¶ 43.

## II.    Investigation and Criminal Charges

Plaintiff's actions on May 5, 2021, led to his being charged with one felony count of

attempting to influence a public servant, two felony counts of menacing with a deadly weapon,

and two misdemeanor counts of false imprisonment. *See People v. Neil*, No. 21CR519 (Douglas

County District Court), 10/8/2021 Motion to Dismiss All Counts, ECF No. 23-2 ¶ 1.[4] In October

2021, the District Attorney for Colorado's Eighteenth Judicial District moved to dismiss all

counts. *Id.*

---

[4] Although the records in *People v. Neil* have been sealed by the state court, *see* ECF No. 23,
they may be used by this court and the parties to this action, which directly challenges the
propriety of Defendants' actions in connection with the investigation leading to the criminal
charges. *See* Colo. Rev. Stat. § 24-72-703(2)(III) ("A record sealed pursuant to article 72 and
section 13-3-117 may be used by a . . . court . . . for any lawful purpose relating to the
investigation or prosecution of any case[.]"); *see also id.* § (7)(a) ("Court orders sealing records
of official actions pursuant to this part 7 do not limit the operations of . . . [t]he rules of discovery
or the rules of evidence promulgated by the supreme court of Colorado or any other state or
federal court."). Defendants filed documents from Plaintiff's state criminal case subject to a
Level One restriction on access, *see* ECF Nos. 23, 23-1, 23-2, but the exemption from the sealing
stricture means this court may reference the contents of those documents here. All of the court's
references from those documents directly bear on Plaintiff's claims and the resolution of the
Motion.

Plaintiff's claims in the instant action rest on two overarching themes: (1) Defendants failed to acknowledge his status as a "peace officer" under Colorado law, pursuant to which he was "statutorily authorized" to pursue and stop Saeed and Colchero, and (2) Defendants mishandled the post-incident investigation, rendering their report thereof (on which Hastings relied in part in applying for the warrant to arrest Plaintiff) "false and misleading." The court sets forth below the well-pleaded facts relevant to both points, in turn.

### A.    Plaintiff's Status as a Peace Officer Under Colorado Law

The facts show that from the outset Defendant Hastings, the LTPD detective assigned to investigate the matter, attempted to ascertain from the DEA whether Plaintiff was authorized to enforce Colorado criminal laws.[5] The day after the incident, Hastings reached out to Plaintiff's supervisor at the DEA:

> On 05/06/2021, I attempted to contact Neil's supervisor David Smith, leaving a message advising him that I had been assigned to the incident and requested that he provide me with any DEA policies regarding off-duty traffic/criminal enforcement. I received the following email from Special Agent James Stroop[6]:
> Detective Hastings,
> Good afternoon! My name is James Stroop and I am an Assistant Special Agent in Charge assigned to the Denver Field Division of the Drug Enforcement Administration.
> Thank you for contacting our office yesterday May 6, 2021, via Group Supervisor David Smith. I wanted to advise that we are presently working through our policies/procedures in regards to your earlier inquiry. I am hopeful to have a final response to you by the beginning of next week. I will advise further as soon as practical.

---

[5] The facts do not allow the court to infer that either Beals or Sneith, an LTPD sergeant, played any significant role in attempting to determine whether Plaintiff was authorized to conduct the stop.

[6] Recall that Smith and Stroop were the DEA officials with whom Plaintiff spoke immediately after the incident.

Thank you for your time and patience,
James Stroop

*See People v. Neil*, No. 21CR519 (Douglas County District Court), 5/11/2021 Hastings Affidavit

for Arrest Warrant, ECF No. 23-1 at 3.

On May 10, 2021, Hastings went to the DEA field office, where Stroop gave him "the

DEA policy and procedure regarding DEA Authority." *Id.* at 4. The next day, Hastings wrote in

his affidavit that he obtained the following information from his review of the policy:

> The associated policy, in-part, states that DEA agents are federal officers, whose
> primary responsibility is to enforce Title 22 of Drug Abuse Prevention Act. DEA
> agents enforce/investigate drug related offenses. DEA agents have authority to
> enforce state statu[t]es, 18 code,[7] under limited basis. It is my interpretation of the
> policy that DEA agents are authorized to enforce state statu[t]es under joint
> ventures and exigent circumstances.

*Id.* While still at the field office, Hastings sought to engage with Stroop about these issues:

> When I asked, Agent Stroop confirmed that such authorization is specific and
> limited in time/duration. Agent Stroop confirmed that their office does not have a
> "standing" declaration of "deputized authority". I was unable to locate any
> authority for DEA agents to enforce traffic, Colorado Revised Statu[t]es 42 code,[8]
> while on or off duty.

*Id.* Hastings was informed that he could obtain a hard copy of DEA policies and procedures only

upon a request from the District Attorney, and that the DEA's "Internal Affairs policy stipulates

that their agency cannot compel Neil to participate in a criminal investigation interview and that

their inter[n]al investigation is initiated when the criminal investigation is concluded." *Id.*

---

[7] Title 18 of the Colorado Revised Statues is the state criminal code. Colo. Rev. Stat. §§ 18-1-101 *et seq.*

[8] Title 42 of the Colorado Revised Statutes is the state vehicles and traffic code. Colo. Rev. Stat. §§ 42-1-101 *et seq.*

After analyzing the information available to him at the time, Hastings concluded there was probable cause to find that Plaintiff's actions in stopping Saeed and Colchero were not within the scope of his authority as a DEA agent:

> Based on the DEA policy, the limited information/statements obtained during interview and the review of the video surveillance there is probable cause that Neil acted outside the scope of his authorized authority. Neil is a public servant, as defined in Colorado Revised Statu[t]es, and he arbitrarily and capriciously violated a lawfully adopted rule or regulation (CRS 18-8-405(1)(b)).[9] In addition, since Neil was not acting within the scope of his authority, his actions placed Saeed in imminent fear of serious bodily injury by the use/display of his handgun. (CRS 18-3-206(1)(a).[10] A[n] arrest affidavit for the associated offenses was sent to the District Attorney's Office for their review.

*Id.* The state judge who reviewed Hastings's affidavit agreed that the probable cause standard was satisfied, and a warrant for Plaintiff's arrest was issued on June 10, 2021. Am. Compl. ¶ 77.

In October 2021—five months after Hastings first asked the DEA to confirm Plaintiff's status and authority to conduct a traffic stop as a Colorado peace officer and four months after the warrant for Plaintiff's arrest was issued—the DEA provided to the District Attorney's Office the information Hastings sought in early May. That information, as the District Attorney put it, "casts new light on [Plaintiff's] authority to act under the circumstances present in this case":

The People are now in receipt of materials provided by the Drug Enforcement

---

[9] "A public servant commits second degree official misconduct if he knowingly, arbitrarily, and capriciously . . . [v]iolates any statute or lawfully adopted rule or regulation relating to his office." Colo. Rev. Stat. § 18-8-405(1)(b).

[10] "A person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 1 misdemeanor, but it is a class 5 felony if committed (a) By the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon." Colo. Rev. Stat. § 18-3-206(1)(a) (2021).

Agency regarding the scope of agent authorization to act in various circumstances.[11] After reviewing the materials, the People have concluded that [Neil] was authorized by his agency to conduct a traffic stop under the circumstances present in this case. Additionally, [Neil] has been authorized by his agency to use deadly physical force in the performance of his duties. Given those determinations, the Defendant does meet the definition of "peace officer" under C.R.S. 16-3-110, and was therefore authorized "to act in any situation in which a felony or misdemeanor has been or is being committed" in his presence. Because the stop was authorized by law, the People cannot prevail on charges of False Imprisonment.

ECF No. 23-2 ¶¶ 2, 11-12.

The DEA's confirmation of Plaintiff's status as a peace officer also negatively impacted the District Attorney's ability to prove the menacing charges, which hinged on "the allegation that the gun was pointed in the direction of the fleeing victims for one to two seconds." *Id.* ¶ 13. The District Attorney explained that, after the DEA finally made clear that Plaintiff was a peace officer "authorized to conduct the traffic stop at issue in this case," the District Attorney was able to determine that Plaintiff's "use or display of force [during the May 5, 2021 incident was] subject to the legal protections afforded law enforcement officers" pursuant to Colorado statute. *Id.* ¶ 14 (referencing Colo. Rev. Stat. § 18-17-707(1) ("A peace officer may use physical force

---

[11] In his surreply, Plaintiff asserts for the first time that a person named Charles Walden, identified as "DEA Division Counsel," sent a letter to LTPD on an unspecified date. ECF No. 37-1 at 4. Walden stated that "DEA Special Agents are authorized to employ deadly physical force under the United States Department of Justice's deadly force policy." *Id.* According to Plaintiff, Walden told Hastings that he could "request additional information and review DEA materials if he needed to." *Id.* Neither Walden nor this letter is mentioned in the Amended Complaint or in Plaintiff's response to the Motion, and Plaintiff may not amend his pleading in a response to a motion to dismiss. *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) (plaintiff cannot "amend her complaint by adding factual allegations in response to Defendant's motion to dismiss").

only if nonviolent means would be ineffective in effecting an arrest, preventing an escape, or preventing an imminent threat of injury to the peace officer or another person.")). Taking into account the actions of the occupants of the Porsche—reaching under the seat, refusing to stop in response to Plaintiff's lights and siren, and speeding away against his directive—the District Attorney found no "reasonable likelihood of disproving beyond a reasonable doubt the assertion that [Neil] used only the degree of force reasonably necessary to ensure his own safety." ECF No. 23-2 ¶ 17. Therefore, the District Attorney concluded, the two menacing charges could not be proven either. *Id.* ¶¶ 13, 17.

Meantime, on September 8, 2021 (while the criminal case was proceeding and before the District Attorney obtained the information that prompted the dismissal of the charges), the DEA put Plaintiff on unpaid administrative leave. *Id.* ¶ 105. The DEA eventually terminated Plaintiff's employment nearly two years later, on July 27, 2023. *Id.*

### B.    Alleged Errors in the Investigation

In addition to Hastings's purported failure to confirm that Plaintiff was "statutorily authorized" to function as a peace officer in Colorado, Defendants Beals and Sneith—the LTPD officers who handled the boots-on-the-ground post-incident investigation—allegedly botched that investigation in numerous ways.

Beals and Sneith didn't interview the witness who made a 911 call. They didn't search the Porsche for marijuana and didn't run a background check on either Saeed or Colchero. They didn't interview Saeed and Colchero in a proper manner that was consistent with "police training." And they prepared a report that was "false and misleading," in Plaintiff's view, because some statements in the report allegedly contradicted what was shown on the officers'

body camera footage. Am. Compl. ¶¶ 55-73. Beals and Sneith exhibited "bias" toward Plaintiff
because they made statements indicating that "none of their [LTPD] officers would have acted
like Plaintiff in his stop of the Porsche." *Id.* ¶ 72.[12] Hastings, the assigned detective, "should
have intervened to prevent this false reporting" by Beals and Sneith. *Id.* ¶ 76.

Two months after the incident, in July 2021, an investigator hired by Plaintiff elicited a
sworn statement from Colchero, the passenger, that "contradicted" a statement Saeed had made
to Beals and Sneith at the time of the incident. *Id.* ¶ 71. In Colchero's version of events conveyed
to Plaintiff's investigator in July 2021, he said that Plaintiff had not "'cut off' the Porsche," but
that Saeed wanted to get in front of Plaintiff because he was driving too slowly. *Id.*

At some point—which the court cannot discern from the well-pleaded facts but which
occurred before the District Attorney's October 8, 2021 motion to dismiss the charges—Plaintiff
provided Colchero's statement to the investigator to the District Attorney. ECF No. 23-2 ¶¶ 24-
26 (describing statement that Colchero "provided two months later," in which "the passenger of
the Porsche contradicted the driver's account"). Colchero's July 2021 statement was included
among the information the District Attorney considered in deciding not to proceed with the
criminal case against Plaintiff. *Id.* ¶ 28. The District Attorney noted the contradiction between
the statements Colchero made in May and those he made in July, which "undermine the driver of
the Porsche's credibility and support the Defendant's claim regarding his need to take action in

---

[12] Months later, on January 29, 2022, Sneith participated in a DEA Office of Professional
Responsibility interview of Plaintiff's conduct in which Sneith referred to Plaintiff as a "DS,"
which Plaintiff believes meant "dumbs**it." Am. Compl. ¶ 73. The court does not understand
Plaintiff's claims in this lawsuit to be based on conduct that occurred after the LTPD
investigation was completed.

support of public safety." *Id.*

## III.  Plaintiff's Claims and the Motion to Dismiss

Plaintiff brings two federal constitutional claims against Hastings, Beals, and Sneith,

suing them in their individual capacities only pursuant to 42 U.S.C. § 1983. Am. Compl. ¶¶ 106-

132 (Claims One and Two). Plaintiff characterizes Claim One as a Fourth Amendment claim

challenging his "false arrest" and Claim Two as seeking redress for a violation of his substantive

due process rights under the Fourteenth Amendment. *See* ECF No. 32 at 2-4 (describing the

distinction between Claims One and Two in this manner). Plaintiff also brings claims under the

Colorado Constitution, *id.* ¶¶ 133-152 (Claims Three and Four).[13] Plaintiff raises municipal

liability claims against the City of Lone Tree pursuant to *Monell v. Dep't of Soc. Servs. of City of*

*New York*, 436 U.S. 658, 690 (1978), *id.* ¶¶ 106-132, based on the LTPD's alleged maintenance

of a "custom, policy, and/or practice of improperly investigating, fabricating and misrepresenting

evidence, withholding exculpatory evidence, and seeking warrants without probable cause." *Id.*

¶ 84.

For the reasons that follow, this court respectfully concludes that the individual

Defendants are entitled to qualified immunity on the federal constitutional claims, and

consequently, that the court should decline to exercise supplemental jurisdiction over the state

law claims. As for the municipal liability claims against the City, the court finds that Plaintiff's

failure to plead that any City employee committed a constitutional violation requires dismissal of

the municipal liability claims.

---

[13] The parties stipulated to the dismissal of Plaintiff's claim for intentional infliction of emotional
distress against the individual Defendants. ECF No. 17.

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making this determination, the "court accepts as true all well pleaded factual allegations in a complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018).

Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. But "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) (internal quotation marks omitted, quoting *Twombly*, 550 U.S. at 556), *reh'g en banc denied*, 83 F.4th 1251 (10th Cir. 2023).

**ANALYSIS**

I.    **Claims Against the Individual Defendants**

    A.    **Federal Constitutional Claims**

Each of the individual defendants claims entitlement to qualified immunity as a defense

to these claims, Motion at 10-13, and so the court begins by outlining the legal framework for

evaluating that defense.

"Qualified immunity attaches when an official's conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quoting *White v. Pauly*, 580 U.S. 73, 78-79

(2017) (internal quotation marks omitted)); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)

(under the doctrine, "government officials performing discretionary functions generally are

shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known").

Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is

implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the

defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161,

1164 (D. Colo. 2017) (quoting *Robbins*, 519 F.3d at 1249).

To overcome the defense, "the onus is on the plaintiff to demonstrate (1) that the official

violated a statutory or constitutional right, and (2) that the right was clearly established at the

time of the challenged conduct." *Surat v. Klamser*, 52 F.4th 1261, 1270-71 (10th Cir. 2022)

(quotations omitted); *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (same). The

court has "discretion to decide the order in which to engage the two prongs of the qualified

immunity standard." *Andersen v. DelCore*, 79 F.4th 1153, 1163 (10th Cir. 2023) (cleaned up).

Regardless of the order, "if the plaintiff fails to establish either prong of the two-pronged

qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d

1123, 1134-35 (10th Cir. 2016); *see also Andersen*, 79 F.4th at 1163 (if the court "conclude[s]

that the plaintiff has not met his burden as to either part of the two-prong inquiry, [the court] *must grant qualified immunity* to the defendant") (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)) (emphasis added). "The record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.'" *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014) (quoting *Medina*, 252 F.3d at 1128).

An official's conduct violates clearly established law when, at the time of the challenged conduct, "the contours of a right are sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up) (emphasis added). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013) (qualified immunity, "by design, 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions'") (quoting *al-Kidd*, 563 U.S. at 743).

For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision "on point," or the "weight of authority from other courts must have found the law to be as the plaintiff maintains." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (quotation omitted). And the Supreme Court has "repeatedly told courts not to define clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).

While a plaintiff is not required to cite a case with "identical facts" to demonstrate a clearly established right, *Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020), clearly established law must place the constitutional issue "beyond debate." *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 741). It is the plaintiff's obligation to cite to cases that satisfy the burden of demonstrating the asserted law is clearly established. *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law.").

The court finds that Plaintiff has not satisfied his heavy two-part burden to overcome the individual Defendants' assertion of qualified immunity on either § 1983 claim.

### 1.    Claim One: Fourth Amendment False Arrest

#### a.    Hastings

*No constitutional violation.* As for the first prong of the qualified immunity analysis, whether Plaintiff's allegations plausibly demonstrate a violation of his Fourth Amendment rights, *Surat*, 52 F.4th at 1270, the well-pleaded facts do not plausibly establish that Hastings lacked arguable probable cause to seek Plaintiff's arrest for his actions in connection with the May 5, 2021 incident.

"In the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012); *see also Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) ("In the context of a qualified immunity defense on an unlawful search or arrest claim, [the Tenth Circuit Court of Appeals] ascertain[s] whether there was 'arguable probable cause'

for the challenged conduct.") (quoting *Kaufman*, 697 F.3d at 1300). "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, *even if mistaken*, belief that probable cause exists." *Stonecipher*, 759 F.3d at 1141 (emphasis added). "A defendant 'is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff.'" *Id.* (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007)); *see also Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (probable cause does not "require the suspect's guilt to be 'more likely true than false.' Instead, the relevant question is whether a 'substantial probability' existed that the suspect committed the crime, requiring something 'more than a bare suspicion.'") (citations omitted).

Importantly, the "assessment of probable cause must be based on *what the officer knew at the time*." *Meadows v. City of Oklahoma City*, 851 F. App'x 127, 129-30 (10th Cir. 2021) (emphasis added). "Probable cause requires only a 'fair probability' of illegal conduct, not 'proof that something is more likely true than false.'" *Id.* at 129 (quoting *United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014)).

Here, the facts the court can consider in evaluating the Motion to Dismiss plausibly demonstrate that Hastings had probable cause to seek Plaintiff's arrest. First, and fundamentally, it was "objectively reasonable" for Hastings to conclude that Plaintiff lacked authority to execute the stop at all. *See Stonecipher*, 759 F.3d at 1141. The day after the incident, Hastings asked the DEA to provide him with the agency's "policies regarding off-duty traffic/criminal enforcement," and the response from Stroop, the Assistant Special Agent in Charge, provided no substantive information and offered only a vague promise to get back to Hastings "as soon as practical." ECF No. 23-1 at 3. Following this non-committal representation, Hastings personally

17

went to the DEA field office a few days later, where he was handed "the DEA policy and procedure regarding DEA Authority" and invited to draw his own conclusions. *Id.* When he pressed Stroop for information, Stroop did not verify that Plaintiff was in fact acting within the scope of his authority; rather, he made a general (if not cryptic) statement that the authority of DEA agents to enforce state statutes was "specific and limited in time/duration," and that the DEA had no "'standing' declaration of 'deputized authority.'" *Id.* Stroop's statements were consistent with the information Hastings culled from his own reading of DEA policy that day: (1) that DEA agents are federal officers; (2) that their primary responsibility is to enforce and investigate drug-related offenses; (3) that no policy specifically authorized DEA agents to enforce the Colorado traffic code, whether the agent was "on or off duty"; and (4) that DEA agents have authority to enforce Colorado state statutes under very limited circumstances, i.e., "*under joint ventures and exigent circumstances*." *Id.* (emphasis added).

In this context, Hastings's conclusion that "there is probable cause that Neil acted outside the scope of his authorized authority" during the incident on May 5, 2021, *id.*, does not plausibly evince the existence of a constitutionally impermissible arrest (or, more specifically, a constitutionally defective affidavit for an arrest warrant). Rather, the facts support the conclusion that "a reasonable officer could have believed that probable cause existed to arrest" Plaintiff. *Stonecipher*, 759 F.3d at 1141. Put another way, this court reasonably may infer from the well-pleaded facts that Hastings had before him information sufficient to indicate a "substantial probability"—that is, "more than a bare suspicion but not proof beyond a reasonable doubt or even a preponderance"—that Plaintiff had committed a crime. *Kerns*, 663 F.3d at 1188. Plaintiff

has failed to allege that Hastings violated his constitutional rights in connection with seeking a warrant for his arrest.

The court is not persuaded to reach a different conclusion because the DEA later—long after Hastings prepared an arrest warrant—provided information to the District Attorney indicating that Plaintiff met "the definition of 'peace officer'" under Colorado law and was therefore authorized to pursue and detain Saeed and Colchero. ECF No. 23-2 ¶¶ 2, 11-12. The assessment of probable cause is "based on *what the officer knew at the time*," *Meadows*, 851 F. App'x at 129-30 (emphasis added), not what came to light months after the fact when the DEA, finally seemingly clearly articulated its position to the District Attorney. The relevant consideration here is that, at the time Hastings was assigned to evaluate the incident, the well-pleaded facts show that he reasonably construed the information the DEA then was willing to provide in concluding that Plaintiff had acted outside the scope of his limited authority to enforce state criminal laws, and that there was probable cause to arrest him for doing so. *See* ECF No. 23-2 ¶ 8 (recognizing the "limited information available from the Drug Enforcement Agency regarding their agents' authorization to act" during the initial investigation of the case).

The court's conclusion on this score would not be altered even if it were to consider Plaintiff's allegations concerning the letter of unknown date from Walden, the DEA attorney, referenced for the first time in Plaintiff's surreply—which, the court emphasizes, it need not do. *See* ECF No. 37-1 at 4. Notably, what Plaintiff chooses to specify concerning Walden's letter is its reference to 21 U.S.C. § 878, a statute which speaks of the authority of DEA agents to enforce *federal* laws and which makes no mention of a similar enforcement authority as to the laws of the states. *Id.* § (a)(3) (stating that DEA agents may "make arrests without warrant (A) for any

offense *against the United States* committed in his presence, or (B) for any felony, *cognizable under the laws of the United States*, if he has probable cause to believe that the person to be arrested has committed or is committing a felony") (emphasis added). Too, the lack of clarity as to when, exactly, Walden sent this letter negates any plausible inference that Hastings would have had it in his possession at the time he was assessing whether to request a warrant for Plaintiff's arrest.

Importantly, the well-pleaded facts do not plausibly indicate that Hastings engaged in "deliberate falsehood or reckless disregard for truth" in seeking the warrant. *Stonecipher*, 759 F.3d at 1142 ("The burden is on the plaintiff to 'make a substantial showing of deliberate falsehood or reckless disregard for truth' by the officer seeking the warrant.") (quoting *Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir. 1990)). There is no basis to infer from the facts that Hastings "entertained serious doubts as to the truth of his allegations" in his affidavit, nor do the circumstances here "evinc[e] obvious reasons to doubt the veracity of the allegations." *Id.* at 1142 (quoting *Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994)). And even if Hastings made a mistake about Plaintiff's authority (to be sure, the DEA ultimately conveyed to the District Attorney that Plaintiff did have authority, though months later), that reasonable error on Hastings's part, based on the information in his possession at the time, does not deprive him of qualified immunity. As the Tenth Circuit has put it, "[a]rguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Stonecipher*, 759 F.3d at 1141; *id.* at 1143-44 (finding that mistake in arrest warrant stating that suspect's conduct constituted a conviction under Missouri law did not deprive officer of qualified immunity). Hastings's misapprehension about the operation of an

20

internal DEA regulation—which he made an effort to run to ground—does not deprive him of qualified immunity. It has long been established that "[q]ualified immunity applies equally to reasonable mistakes of law and fact." *Id.* at 1142 (citing *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009)); *see also Saucier v. Katz*, 533 U.S. 194, 206 (2001) (qualified immunity grants officers "immunity for reasonable mistakes as to the legality of their actions"), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

In short, Plaintiff bears the burden to overcome Hastings's claim of qualified immunity based on a reasonable mistake of fact or law. He has not met that burden here.

Finally, to the extent Plaintiff grounds his contention that Hastings lacked probable cause because he inappropriately relied on information derived from the supposedly faulty investigation conducted by Beals and Smith, Am. Compl. ¶¶ 78-81, he has plausibly alleged no defect in probable cause on that basis. The officers' description of their interviews of Saeed, Colchero, and Plaintiff himself (outlined in detail in Hastings's affidavit, ECF No. 23-1 at 1-3) reveals no patent flaw suggesting that the officers failed to conduct a reasonable investigation. Am. Compl. at 14. Neither is any deficiency in probable cause plausibly indicated by Plaintiff's ability to elicit later, through his own investigator, a contradictory statement from the eighteen-year-old Colchero. *Id.* ¶ 71.

Plaintiff also alleges that while the warrant application was pending, Hastings "[a]ppear[s] to have recognized the inconsistent reporting" and requested that Sneith provide a supplemental report. *Id.* ¶ 75. But the alleged "appearance" of why Hastings requested a supplemental report is only Plaintiff's opinion or surmisal. It is equally plausible that Hastings could have simply wanted additional information, not necessarily that he believed the original

21

report was inaccurate or inconsistent. Plaintiff's allegations concerning Hastings' request for the supplement do not move his claim from the conceivable to the plausible. *Twombly*, 550 U.S. at 566-67 ("while the plaintiff 'may believe the defendants [unlawfully] conspired . . ., [their] actions could equally have been prompted by lawful" conduct) (citation omitted).

The Constitution does not entitle a suspect to a perfect investigation. *See Beard*, 24 F.3d at 116 (failure to investigate a matter fully, to exhaust every available lead, or to interview all potential witnesses does not constitute a violation of the Fourth Amendment). "Indeed, the law books are replete with cases indicating that the fact that officers might have conducted a more thorough investigation does not negate the existence of probable cause." *Cortez*, 478 F.3d at 1139 n.3 (Gorsuch, J., concurring in part) (citing inter alia *McKinney v. Richland County Sheriff's Dep't.*, 431 F.3d 415, 418-19 (4th Cir. 2005) ("The fact that [the officer] did not conduct a more thorough investigation before seeking the arrest warrant does not negate the probable cause established by the victim's identification.")). "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Barham v. Town of Greybull Wyo.*, 483 F. App'x 506, 508 (10th Cir. 2012) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)); *see also Harris v. Commerce City,* No. 09-cv-01728-MSK-KMT, 2010 WL 3307465, at *8 (D. Colo. Aug. 18, 2010) ("Although it may be true that a more thorough investigation might have cast Ms. Jenkins' allegations in a different light, the law does not require a police officer to complete a thorough investigation before electing to effect an arrest."); *O'Connell v. City of Santa Fe*, No. CV 03-979 BB/DJS, 2005 WL 8163811, at *6-7 (D.N.M. Mar. 9, 2005) ("Once an officer has accumulated sufficient evidence to constitute

probable cause, the officer has no constitutional obligation to continue to investigate the matter despite the possibility that further investigation might uncover exculpatory evidence.").

Here, Hastings's detailed affidavit contains sufficient "reasonably trustworthy information that would lead a reasonable person to believe an offense was committed," including the information he gleaned from the interviews conducted by Beals and Sneith. *See United States v. Patene*, 304 F.3d 1013, 1018 (10th Cir. 2002), *rev'd on other grounds*, 542 U.S. 630 (2004). The contents of the officers' reports, as discussed at length in the affidavit, do not plausibly indicate any reason to doubt the accuracy of the officers' accounts of their interviews of Saaed, Colchero, and Plaintiff himself, but rather plausibly supported Hastings's conclusion that there was a "substantial chance of criminal activity" on Plaintiff's part. *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). No constitutional violation results from Hastings not having taken additional steps to ferret out information that might have cast the statements provided to Sneith and Beals in a different light.

Even if the court were to assume Hastings acted negligently in relying on Beals's and Sneith's interviews, that would be insufficient to establish a constitutional violation. *Barham*, 483 F. App'x at 508 (finding that police officer could not "be found constitutionally liable based simply on their failure to ask" a witness certain questions, and that "[t]he officers' failure to ask these questions did not rise to the level of reckless disregard for the truth. At most, Plaintiff's arguments allege the investigation was negligent, but this is insufficient to establish a constitutional violation[.]") (citations omitted); *see also Stonecipher*, 759 F.3d at ("[T]he failure to investigate a matter fully, to exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless

disregard for the truth. To the contrary, it is generally considered to betoken negligence at most.") (quoting *Beard*, 24 F.3d at 116; citing inter alia *Moldowan v. City of Warren*, 578 F.3d 351, 388 (6th Cir. 2009) (asserting the exculpatory value of evidence must be "apparent" and that "the police cannot be held accountable for failing to divine the materiality of every possible scrap of evidence")). Nor is probable cause negated by the fact that *Plaintiff* would have investigated the matter differently than the officers chose to do, or that some contradictory information materialized after Hastings's affidavit was prepared, or that Plaintiff's behavior ultimately may have been shown to be innocent. *See Gates*, 462 U.S. at 243 n.13 (recognizing that "innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands").

In sum, Plaintiff has not plausibly alleged that his right to be free from arrest without probable cause was violated by Hastings relying on investigatory information provided to him by Beals and Sneith.

*                *                *

The well-pleaded facts plausibly establish that the "low bar" of probable cause required for Hastings to seek Plaintiff's arrest was satisfied. *Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1220 (10th Cir. 2020). Because Plaintiff has failed to allege a violation of his constitutional rights, Hastings is entitled to qualified immunity on this basis alone. *Andersen*, 79 F.4th at 1163 (court "must grant qualified immunity" if the plaintiff fails to meet his burden on either part of the qualified immunity test). However, because this is a recommendation, and to ensure a complete record for Judge Rodriguez's consideration, the court

24

proceeds to evaluate the clearly established law prong of the qualified immunity inquiry and finds that Plaintiff also has failed to identify any clearly established law.

*No clearly established law.* Plaintiff has adduced no Tenth Circuit or Supreme Court precedent, or a clear weight of authority from other courts, clearly establishing that a police officer lacks probable cause to request an arrest warrant under the circumstances present here. Plaintiff points to no case that would have put "*every reasonable* official" in Hastings's position on notice, "*beyond debate*," that he would violate the Fourth Amendment by requesting an arrest warrant for a federal law enforcement officer (1) after taking multiple steps to obtain information from the officer's federal employer in an attempt to verify whether the officer had authority to enforce Colorado criminal or traffic laws; (2) after reviewing the policy provided by the agency and finding nothing in them indicating that the officer had such authority; and (3) only then drawing the conclusion that the federal officer had violated the law because he acted outside the scope of his authority. *See* Resp. at 9-11; *see also al-Kidd*, 563 U.S. at 741 (emphasis added).

Plaintiff asserts that "prior judicial decisions have given Individual Defendants fair warning that their actions, as alleged by Plaintiff, lead to constitutional violations." Resp. at 11. But the trouble is that Plaintiff cites no such case law, and neither has this court located any precedent that would have made it clear, beyond debate, to every reasonable official in Hastings's position that the information he had did not satisfy the "low bar" of probable cause required for requesting an arrest warrant. *al-Kidd*, 563 U.S. at 741; *see also Rivas-Villegas*, 595 U.S. at 5-6 (recognizing that "[t]his inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition'") (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

The only two cases Plaintiff mentions in his response brief—he cites no case in his surreply, ECF No. 37-1 at 2-4—do not clearly establish the law in the scenario Hastings faced. Resp. at 11 (referencing *Robitaille v. Spitzer*, 175 F. Supp. 3d 1299 (D. Colo. 2016), and *United States v. Lanier*, 520 U.S. 259 (1997)). *Lanier*, which involved a state court judge charged by the government and indicted by a grand jury for sexual assault, has no bearing on the matter at hand and would not itself have given "fair warning" to Hastings—"beyond debate," as the more recent Supreme Court authority requires—that his conduct in this instance would violate the Constitution. *See id.* at 266.

*Robitaille* is a district court case and, obviously, not an opinion from the Supreme Court or Tenth Circuit. However, the decision does cite a Tenth Circuit case for the proposition that it is "a clearly established violation of the plaintiff's Fourth and Fourteenth Amendment rights to *knowingly or recklessly omit* from an arrest affidavit information which, if included, would have vitiated probable cause." 175 F. Supp. 3d at 1303 (quoting *Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990)) (emphasis in original). But the well-pleaded facts here do not plausibly suggest that Hastings "knowingly or recklessly omit[ted]" any facts that would have eradicated a finding of probable cause. To the contrary, Hastings clearly set forth the facts he had obtained about Plaintiff's authority—or lack thereof—acquired, it reasonably may be inferred, by his pressing through a federal agency's initial resistance to taking a specific position on the matter of Plaintiff's conduct. Plaintiff argues in his surreply that it was Hastings's obligation to do even more to extract information from the DEA, including to "provide[] the DEA with the tools it needed to fully evaluate Plaintiff's actions." ECF No. 37-1 at 5. But that turns the qualified immunity standard on its head: an official is not deprived of the protections of immunity because

Plaintiff can conceive of a scenario in which the official could have obtained more information or done (to Plaintiff's way of thinking) a more perfect investigation. Qualified immunity may be denied only where the facts demonstrate "plainly incompetent" actions or knowing violations of the law. *Mullenix*, 577 U.S. at 12. The well-pleaded facts here plausibly indicate no basis for appending either label to Hastings. Hastings's decision—delineated in a lengthy, detailed affidavit and describing his attempt to secure information from the DEA—does not plausibly indicate overt incompetence or a knowing violation of the law.

Lastly, Plaintiff points to no cases clearly establishing that Hastings committed an error of constitutional magnitude in relying on the information garnered through the investigatory efforts of Beals and Sneith. Indeed, he does not cite a single case on this topic, let alone one that would have put Hastings on notice, beyond debate, that he was required to "intervene" in the investigation and second-guess how the officers were going about their business—lest he violate Plaintiff's constitutional rights. *See* Am. Compl. ¶¶ 74-76. Nor could he. As detailed in the previous section of this recommendation, the clearly established law holds firmly to the contrary. *See, e.g.*, *Barham*, 483 F. App'x at 508.

To sum up, Plaintiff fails to identify any case even generally addressing the factual context that Hastings faced, let alone precedent with the required precision to render the law clearly established against him. Plaintiff thus has failed to meet his burden on the clearly established law prong, compelling the conclusion that Hastings is entitled to qualified immunity for this additional reason.

**Conclusion regarding Hastings and Claim One.** Based on the above, Plaintiff has failed to meet his burden to allege a violation of clearly established law, entitling Hastings to qualified

immunity on Claim One, the Fourth Amendment claim. The court therefore respectfully

**RECOMMENDS** that this claim be **dismissed with prejudice** as against Hastings.[14]

### b.    Beals and Sneith

For much the same reasons that qualified immunity is afforded to Hastings, so are Beals

and Sneith entitled to immunity for their actions. As to these Defendants, Plaintiff likewise has

not plausibly alleged that they violated his constitutional right to avoid false arrest, nor has he

pointed to Supreme Court or Tenth Circuit law that would have put every reasonable officer in

Beals's and Sneith's position on notice, beyond debate, that the actions they took in connection

with the investigation of the May 5, 2021 incident would violate Plaintiff's Fourth Amendment

rights. *See al-Kidd*, 563 U.S. at 741.

*No constitutional violation.* Plaintiff has not surmounted the first hurdle required to

overcome qualified immunity: the requirement that he plead facts plausibly establishing a

violation of a constitutional right. He posits a litany of alleged defects in how Beals and Sneith

handled their investigatory duties, including the lack of searching the Porsche for marijuana;

separating Saeed and Colero during their interviews; testing them for drugs; and conducting a

"body search" on the two teenagers. Am. Compl. ¶¶ 61, 65, 66. But these allegations allow the

---

[14] *See, e.g.*, *Clark v. Wilson*, 625 F.3d 686, 692 (10th Cir. 2010 (instructing district court to dismiss based on qualified immunity "with prejudice"); *Lybrook v. Members of the Farmington Mun. Schs. Bd. of Educ.*, 232 F.3d 1334, 1341-42 (10th Cir. 2000) (affirming district court order granting motion to dismiss with prejudice on qualified immunity grounds); *Vreeland v. Olson*, No. 20-cv-02330-PAB-SKC, 2021 WL 4237269, at *5 n.7 (D. Colo. Sept. 16, 2021) ("The Court will dismiss the claim against Olson and Reed with prejudice because they are entitled to qualified immunity.") (citing *McCrary v. Jones*, No. CIV-13-573-M, 2015 WL 873641, at *6 (W.D. Okla. Feb. 27, 2015) (dismissing claim with prejudice where defendant was entitled to qualified immunity)).

court to infer nothing more than Plaintiff's disagreement with the investigatory choices the

officers made. As the court has explained above, well-established law holds that no

constitutional violation occurs if Plaintiff is not afforded a perfect investigation or one that, from

his perspective, is not sufficiently probing. Notably, too, Plaintiff's focus on the alleged defects

in the officers' evaluation of the driver and passenger is misplaced. As may be readily inferred

from the well-pleaded facts, the uppermost concern in the minds of the officers was not whether

there may have been probable cause to stop the Porsche, but rather to suss out the witnesses'

stories about a man in civilian clothes in a Hyundai Santa Fe[15] who flashed lights and siren at

them; pulled them over as if he were a police officer; spoke with them in a confrontational way;

and then pulled a gun on them as they fled from him. *See* ECF No. 23-1 at 1-3 (description of

reports from Beals and Sneith in Hastings's affidavit). The officers' assessment that *Plaintiff* and

his actions should be their primary focus reflects a difference of opinion between the officers and

Plaintiff, and that difference of opinion does not amount to a constitutional violation.

Neither has Plaintiff plausibly alleged that either officer purposefully injected any false

information into the investigation or their reporting of it. He asserts that, months after the

incident when the DEA was conducting its own investigation of his actions, Sneith said that he

had separated Saeed and Colchero during their interviews in the aftermath of their encounter

with Plaintiff, but that "was false based on body cam footage." *Id.* ¶ 67. If there was a

discrepancy between Sneith's statement and the camera footage, the equally plausible inference

to draw from Plaintiff's allegation is that Sneith was mistaken or misremembered the incident

months after the fact. And "[a]n officer's reasonable mistake of fact does not a constitutional

---

[15] *See* ECF No. 23-1 at 1-2.

violation make." *United States v. Cunningham*, 630 F. App'x 873, 876 (10th Cir. 2015). In any

event, Sneith's allegedly false statement was made long after the incident and bore no causal

connection to Plaintiff's arrest. In his contemporaneous report, however, Sneith made clear that

he spoke with Saeed and Colcheno at the same time. *See* ECF No. 23-1 at 2 ("While Sgt. Sneith

*was speaking with Saeed and Jhoen* . . .") (emphasis added).

　　　　Plaintiff also contends that Saeed made false claims about Plaintiff's actions during the

incident, Am. Compl. ¶ 69, but he pleads no facts plausibly indicating that either Sneith or Beals

knew or should have known that Saeed was lying at the time. Plaintiff's assertion that Sneith put

"false and implausible statements" in a supplemental report is based on a purported "conflict"

between that information and body camera footage and dispatch logs, *id.* ¶ 75, but he pleads no

facts explaining these purported conflicts with any specificity so as to plausibly establish how

those discrepancies led to Plaintiff's arrest and the alleged violation of his constitutional rights.

And with such supporting facts notably absent from the pleading, the alleged "conflicts" may

equally be attributed to wholly innocent conduct on Sneith's part, including a simple difference

in perception of the situation or (at most) a mistake. *Robbins*, 519 F.3d at 1247 (if allegations

"encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged

their claims across the line from conceivable to plausible'") (quoting *Twombly*, 550 U.S. at 570).

Simply put, these allegations do not allow this court to infer that Sneith engaged in "deliberate

falsehood or reckless disregard for truth" in his actions concerning Plaintiff. *Stonecipher*, 759

F.3d at 1142. Neither may such an inference be drawn as to Beals from any well-pleaded fact.

　　　　Plaintiff has not alleged that Beals or Sneith violated his Fourth Amendment rights, and

so both officers are entitled to qualified immunity.

***No clearly established law.*** The court has said it earlier, but reemphasizes here, that

Plaintiff has adduced no Tenth Circuit or Supreme Court authority that would have put every

reasonable official on notice, beyond debate, that Beals's and Sneith's conduct would violate

Plaintiff's Fourth Amendment rights. *See* Resp. at 9-11; ECF No. 37-1 at 2-4; *see also al-Kidd*,

563 U.S. at 741. Plaintiff having failed to meet his burden as to either part of the two-prong

inquiry, the court must grant qualified immunity to Beals and Sneith. *Andersen*, 79 F.4th at 1163.

The court therefore respectfully **RECOMMENDS** that Claim One be **dismissed with prejudice**

as against Beals and Sneith.

### 2.    Claim Two: Fourteenth Amendment Substantive Due Process

***No cognizable Fourteenth Amendment claim.*** Plaintiff characterizes Claim Two as

alleging a violation of his substantive due process rights secured by the Fourteenth Amendment.

ECF No. 32 at 2-4; *id.* at 11 (referencing "conscience-shocking level" and citing *Cnty. of*

*Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). Defendants argue that the Fourteenth

Amendment label improperly masks the true nature of the claim, which—like Claim One—

hinges on the assertion that Plaintiff was subject to a false arrest in violation of the Fourth

Amendment's prohibition on unreasonable searches; put another way, Claim Two is

fundamentally duplicative of Claim One. Motion at 6-7. The individual Defendants seek

dismissal of the claim on grounds that the proper textual source for the claim is the Fourth

Amendment. *Id.* Defendants correctly articulate the law on this point.

"Where a particular Amendment provides an explicit textual source of constitutional

protection against a particular sort of government behavior, that Amendment, not the more

generalized notion of substantive due process, must be the guide for analyzing [the related]

claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (finding that the plaintiff, who argued that he had a liberty interest to be free of criminal prosecution without probable cause, should have made a Fourth Amendment, not Fourteenth Amendment, claim) (internal quotation marks and citation omitted). The same rationale applies to procedural due process claims. *Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1129 (D. Colo. 2014), *aff'd*, 811 F.3d 349 (10th Cir. 2015) (finding Plaintiff failed to state a claim under the Fourteenth Amendment where the basis of Plaintiff's procedural due process claim mirrored his false arrest claim.).

Although Plaintiff contends that he alleges the individual Defendants engaged in misconduct "outside of false arrest," Resp. at 3, the animating force behind both of his constitutional tort claims—which are factually and logically intertwined—is his allegedly improper arrest. No matter how they are parsed, the substantive allegations underpinning Plaintiff's substantive due process claim concern the individual Defendants' involvement in the investigation of the May 5, 2021 incident and Plaintiff's resulting arrest. Indeed, it appears highly improbable that Plaintiff would have brought this lawsuit had he not been arrested.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and further states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment thus provides an explicit textual source of protection against the individual Defendants' alleged actions related to the investigation and arrest. Therefore, Plaintiff may not bring a Fourteenth Amendment claim based on these allegations. *Nichols v. Bd. of Cnty. Comm'rs of Cnty of Adams*, No. 23-cv-00224-PAB-MEH, 2024 WL

729673, at *17 (D. Colo. Feb. 21, 2024) (dismissing substantive due process claim with prejudice where "[t]he factual allegations underpinning" that claim "concern[ed] [defendant's] involvement in the investigation of the incident on August 27, 2021 and resulting arrest of [plaintiff]," and were thus covered by the explicit textual protection of the Fourth Amendment); *Montoya v. City and Cnty. of Denver*, No. 16-cv-01457-JLK, 2021 WL 1244264, at *14 (D. Colo. Mar. 4, 2021), *aff'd*, 2022 WL 1837828 (10th Cir. June 3, 2022) (holding that "the Fourth Amendment, and not substantive due process, must be the guide for considering" a claim alleging that an affidavit in support of an arrest warrant "deceived the judicial officer into believing there was probable cause for [plaintiff's] arrest"); *McRoberts v. Rosas*, No. 21-2470-DDC-TJJ, 2022 WL 4482481, at *10-11 (D. Kan. Sept. 27, 2022) (dismissing plaintiff's substantive due process claims based on her alleged unlawful arrest and detention because they fell under the Fourth Amendment's explicit textual protection).

The court therefore respectfully **RECOMMENDS** that Claim Two be **dismissed** against Hastings, Beals, and Sneith **with prejudice**. *See, e.g.*, *Preece v. Cook*, No. 13-cv-03265-REB-KLM, 2014 WL 6440406, at *1 (D. Colo. Nov. 17, 2014) ("A dismissal under Rule 12(b)(6) is a determination on the merits . . . . and presumptively is entered with prejudice.") (citing inter alia *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981)); *Lomax v. Ortiz-Marquez*, 754 F. App'x 756, 759 (10th Cir. 2018), *aff'd*, 140 S. Ct. 1721 (2020) ("Unless otherwise stated, dismissals under Rule 12(b)(6) are with prejudice."). Claim Two fails on this basis alone and should not proceed. Notwithstanding this fundamental defect, even if the court were to countenance a substantive due process claim in this context, it would find that Plaintiff has failed to meet his heavy two-part burden to overcome the individual Defendants' assertion of qualified

immunity. To ensure a thorough recommendation, the court proceeds to explain the basis for that conclusion.

   ***No constitutional violation or clearly established law.*** Turning first to the constitutional violation prong of the qualified immunity inquiry, "[t]he ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (quotations omitted). "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." *Lewis*, 523 U.S. at 848. "Conduct that shocks the judicial conscience . . . is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (internal quotation marks and quotations omitted). In assessing the plausibility of Plaintiff's claim, this court is bound by Tenth Circuit precedent holding that "[t]o show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or 'employ[ed] it as an instrument of oppression.'" *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013) (quoting *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008)). The court also must apply the principle that "[t]he behavior complained of must be egregious and outrageous," and it must further acknowledge that substantive due process prohibits "*only the most egregious official conduct.*" *Id.* (citations omitted) (emphasis added). Put simply, "the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig v. Harder,* 64 F.3d 567, 574 (10th Cir. 1995).

Here, Plaintiff alleges the individual Defendants included wrong information in the arrest affidavit and reports of the incident, drew the wrong conclusions about the information they had, generally botched the investigation, and (at least as to Beals and Sneith) exhibited "animosity and bias" toward Plaintiff. *See generally* Am. Compl. ¶¶ 49-76). On the animosity and bias point, Beals and Sneith are said to have criticized Plaintiff's conduct during the stop and suggested to persons at the scene after Plaintiff's departure that "none of their [LTPD] officers would have acted like Plaintiff in his stop of the Porsche." *Id.* ¶ 72.

These allegations—affording them the maximum possible credit—fall far short of demonstrating conduct that is egregious or outrageous. Importantly, when this court "attempt[s] to discern whether alleged conduct is conscience-shocking," it "must be mindful that 'the Due Process Clause is not a guarantee against incorrect or ill-advised government decisions.'" *Hernandez*, 734 F.3d at 1261 (quoting *Uhlrig*, 64 F.3d at 573)). An inference of "incorrect" and "ill-advised" is the most that can be drawn from Plaintiff's allegations concerning the individual Defendants' conduct here, even crediting his assertion of bias and animosity on the part of the officers. Plaintiff objects to the criticism of his actions voiced to the group gathered after the incident, Am. Compl. ¶ 72, but Beals and Sneith voicing their opinion—whether right or wrong—that Plaintiff handled the situation ineptly is not conscience-shocking. Police officers do not offend the Constitution, or lose the protection of qualified immunity, because they make a critical remark about how a traffic encounter was handled in their jurisdiction. Neither does such criticism plausibly suggest that any individual Defendant used his authority as an LTPD officer as "an instrument of oppression" rising to the level of conscience-shocking conduct. *See Hernandez*, 734 F.3d at 1261.

Exercising, as directed by the Tenth Circuit, "restraint in defining [the] scope" of substantive due process claims, mindful of "the concern that § 1983 not replace state tort law," and "cognizant of "the need for deference to local policymaking bodies in making decisions impacting upon public safety," *Uhlrig*, 64 F.3d at 573, this court respectfully finds that Plaintiff has failed to plausibly allege a violation of his substantive due process rights. The individual Defendants are entitled to qualified immunity on Claim Two for this reason.

**No clearly established law.** Plaintiff also fails to meet his burden on the clearly established law prong. He points to two cases, neither of which has anything to do with alleged flaws in an arrest affidavit or police investigation—prohibiting either precedent from rendering the law clearly established, beyond debate, to every reasonable officer that Defendants' conduct violated Plaintiff's substantive due process rights. Resp. at 11-12 (discussing *Lewis* and *Hernandez*).

In *Lewis*, the Supreme Court considered a substantive due process claim predicated on the death of a person who was killed during a high-speed police chase. Even under those circumstances, the Court found that the officer's conduct was *not* conscience shocking. *Lewis*, 523 U.S. at 855 ("Regardless whether Smith's behavior offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it does not shock the conscience, and petitioners are not called upon to answer for it under § 1983."). *Hernandez*, too, was a wrongful death case brought by the estate of two workers who were killed on a construction site, allegedly as a result of a contract with the state department of transportation that created a financial incentive for the contractor to expose its workers to unsafe conditions. 734 F.3d at 1260. But even those tragic circumstances did not plausibly support a

substantive due process claim against individual state department of transportation officials. *Id.*
at 1261 (in reversing trial court's denial of qualified immunity to defendants, finding that "[t]he
most that can be said of [the officials'] is that they held [the contractor] to its contract with [the
Oklahoma Department of Transportation]. We do not find this egregious or outrageous."). Given
the factual dissimilarities between *Hernandez* and the case at hand—coupled with the conclusion
of the Tenth Circuit that substantive due process was not offended—*Hernandez* likewise is not
"clearly established" precedent sufficient to have put the individual Defendants here on notice
that their "*particular* conduct" violated Plaintiff's substantive due process rights. *Mullenix*, 577
U.S. at 12 ("The dispositive question is whether the violative nature of *particular* conduct is
clearly established.") (cleaned up, emphasis in original).

Having failed to identify any precedent with the required precision to render the law
clearly established, Plaintiff has failed to meet his burden on the clearly established law prong.
The individual Defendants are entitled to qualified immunity on Claim Two, a Fourteenth
Amendment substantive due process claim. The court therefore respectfully **RECOMMENDS**
that this claim be **dismissed with prejudice** as against Hastings, Beals, and Sneith.

B.      **Claims Three and Four: Colorado Constitutional Claims**

In a case where a plaintiff brings both federal and state law claims, "if the federal claims
are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims
should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966);
*see also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)
("When all federal claims have been dismissed, the court may, and usually should, decline to
exercise jurisdiction over any remaining state claims."); 28 U.S.C. § 1367(c)(3) (permitting a

district court to decline supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction"). In the Tenth Circuit, when the district court has dismissed all claims over which it has original jurisdiction, courts must dismiss pendent state law claims without prejudice "absent compelling reasons to the contrary." *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner,* 54 F.3d 664, 669 (10th Cir. 1995)), *abrogated on other grounds by Torres v. Madrid*, 592 U.S. 306 (2021); *Endris v. Sheridan Cnty. Police Dep't*, 415 F. App'x 34, 36 (10th Cir. 2011) ("any state-law claims for assault and battery or mental and emotional injury were inappropriate subjects for the exercise of pendent jurisdiction where all federal claims had been dismissed").

Because the court is recommending dismissal of Plaintiff's federal claims against the individual Defendants, it **RECOMMENDS** that the court decline supplemental jurisdiction over Claims Three and Four, which are brought under the Colorado Constitution. Further, because those claims would be dismissed on jurisdictional grounds, they should be **dismissed without prejudice**. *See, e.g.*, *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2019 (dismissal for lack of subject matter jurisdiction is generally without prejudice).

## II.    Municipal Liability Claim

Plaintiff brings Claims One and Two, the Fourth and Fourteenth Amendment claims, against the City as well as the individual Defendants. Am. Compl. at 22, 24.

Although *Monell* liability is not vicarious, a plaintiff must still personally experience some constitutional harm at the hands of an entity's employee in order to be liable. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have

*authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original); *Myers v. Oklahoma Cnty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) ("It is well established, therefore, that a municipality cannot be held liable under section 1983 for the acts of an employee if a jury finds that the municipal employee committed no constitutional violation."). Therefore, in order to state a claim against a municipality pursuant to § 1983, a plaintiff must plausibly allege that (1) a municipal employee committed a constitutional violation and (2) a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).

For the reasons discussed above, the complaint fails to allege that Hastings, Beals, or Sneith committed a constitutional violation. Plaintiff's failure to allege that municipal employees committed a constitutional violation requires that his municipal liability claims against the City be dismissed. *Nichols*, 2024 WL 729673, at *17 (dismissing municipal liability claim against city with prejudice where "the complaint fails to allege that Detective Moss or Chief Wilson committed a constitutional violation"); *St. George v. City of Lakewood*, No. 22-1333, 2024 WL 3687780, at *4 (10th Cir. Aug. 7, 2024) (affirming dismissal of municipal liability claim because it "require[s] an underlying violation" by an officer). The court therefore respectfully **RECOMMENDS** that Claims One and Two be **dismissed with prejudice** as against the City of Lone Tree.

## CONCLUSION

In accordance with the foregoing, the court respectfully **RECOMMENDS** that the

Motion to Dismiss (ECF No. 21) be **GRANTED** and (1) Claims One and Two be **dismissed**

**with prejudice** as against all Defendants and (2) Claims Three and Four be **dismissed without**

**prejudice**.[16]

DATED: August 28, 2024                                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[16] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after
service of a Magistrate Judge's order or recommendation, any party may serve and file written
objections with the Clerk of the United States District Court for the District of Colorado. 28
U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will
result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See
Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver
rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119,
1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require
review, including when a "pro se litigant has not been informed of the time period for objecting
and the consequences of failing to object").